FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, California  94304
Telephone:  (650) 849-6600
Facsimile:   (650) 849-6666
Erik R. Puknys (Bar No. 190926)
erik.puknys@finnegan.com
Lily Lim (Bar No. 214536)
lily.lim@finnegan.com
Hillary Cain (Bar No. 267440)
hillary.cain@finnegan.com

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400
E. Robert Yoches, *pro hac vice*
bob.yoches@finnegan.com
Zhenyu Yang (Bar No. 249112)
zhenyu.yang@finnegan.com

Attorneys for Defendants
*ABBYY USA Software House, Inc., ABBYY Software, Ltd., ABBYY Production LLC, and Lexmark International, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| NUANCE COMMUNICATIONS INC., <br><br> Plaintiff, <br><br> v. <br><br> ABBYY USA SOFTWARE HOUSE, INC., a California corporation, ABBYY SOFTWARE, LTD., a Cyprus corporation, ABBYY PRODUCTION LLC, a Russia corporation, and LEXMARK INTERNATIONAL, INC., a Delaware corporation, <br><br> Defendants. | CASE NO. CV 08-02912-JSW (MEJ) <br><br> CASE NO. CV 08-04227 JSW (MEJ) (Terminated 04/18/11) <br> CASE NO. CV 08-04942 JSW (MEJ) (Terminated 04/18/11) <br> CASE NO. CV 08-01035 JSW (MEJ) (Terminated 04/07/09) <br><br> **DEFENDANTS' OPPOSITION TO NUANCE'S MOTION FOR LEAVE TO AMEND ITS PATENT RULE 3-1 INFRINGEMENT CONTENTIONS** <br><br> Hearing date: June 28, 2012 <br> Time: 10:00 a.m. <br> Courtroom: 15th Floor, Courtroom B <br> Judge: Hon. Maria-Elena James |

TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1
II. BACKGROUND .....................................................................................................3
    A.  Nuance's Infringement Contentions ...............................................................3
    B.  Nuance's Proposed Amendments of the Infringement Contentions........................5
III. ARGUMENT............................................................................................................6
    A.  A Party May Amend Infringement Contentions Only if It Has Good Cause ..........6
    B.  Nuance Did Not Exercise Diligence in Seeking the Amendment ..........................7
        1.  Nuance Failed to Exercise Diligence in Seeking to Add Claims.................7
        2.  Nuance Failed to Exercise Diligence in Seeking to Add Doctrine of Equivalents Allegations ...............................................................................7
        3.  Nuance Fails to Support Its Representation That It Is Simply Providing More Detail to Its Existing Contentions by Adding Citations to the Software ........................................................................................................9
        4.  Nuance's Lack of Diligence Alone Justifies a Denial of Its Motion .........10
    C.  Allowing Nuance to Amend Its Contentions Would Prejudice ABBYY ...............10
IV. CONCLUSION.........................................................................................................12

# **TABLE OF AUTHORITIES**

**CASES**

*Acer, Inc. v. Tech. Props. Ltd.*,
  Nos. 5:08cv877, 5:08cv882, and 5:08cv5398, 2010 U.S. Dist. LEXIS 142472
  (N.D. Cal. Sept. 10, 2010) ........................................................................................6, 10

*Golden Hour Data Sys., Inc. v. Health Servs. Integration, Inc.*,
  No. C 06-7477 SI, 2008 U.S. Dist. LEXIS 75495 (N.D. Cal. July 1, 2008) .............................6

*LG Elecs. Inc. v. Q-Lity Computer Inc.*,
  211 F.R.D. 360 (N.D. Cal. 2002) ...........................................................................................6

*MEMC Electronic Materials v. Mitsubishi Materials Silicon Corp.*,
  No. 01-4925 SBA, 2004 U.S. Dist. LEXIS 31314 (N.D. Cal. Mar. 1, 2004) ............................9

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) ......................................................................................6, 10

*Optimumpath, LLC v. Belkin Int'l, Inc.*,
  No. 09-01398 CW, 2011 U.S. Dist. LEXIS 41634 (N.D. Cal. Apr. 12, 2011) ......................7, 9

*Oracle Am., Inc. v. Google Inc.*,
  No. 10-03561 WHA, 2011 U.S. Dist. LEXIS 87251 (N.D. Cal. Aug. 8, 2011) .........................7

*Rambus Inc. v. Hynix Semiconductor, Inc.*,
  No. 05-00334 RMW, 2008 U.S. Dist. LEXIS 123187 (N.D. Cal. Dec. 29, 2008) .....................9

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
  No. C-09-3304 EMC, 2011 U.S. Dist. LEXIS 131688 (N.D. Cal. Nov. 15, 2011) ..................10

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*,
  904 F.2d 677 (Fed. Cir. 1990) .............................................................................................12

**STATUTES**

35 U.S.C. §112, ¶ 4 ..............................................................................................................11

**OTHER AUTHORITIES**

L.R. 3-1(e) ........................................................................................................................7, 8

L.R. 3-6 ........................................................................................................................6, 9, 10

Defendants ABBYY USA Software House, Inc., ABBYY Software, Ltd., ABBYY Production LLC, and Lexmark International, Inc. oppose Nuance Communications, Inc.'s Motion for Leave to Amend its Patent Rule 3-1 Infringement Contentions ("Motion").

## I. INTRODUCTION

A month ago, Nuance sought to add multiple new products into this case. The defendants opposed, emphasizing Nuance's lack of diligence and the prejudice to the defendants if the Court allows the amendment weeks before the close of fact discovery. The defendants also drew the Court's attention to Nuance's attempt to sneak in new claims without informing the Court. Two days later, Nuance hurried to file this Motion without a proper meet-and-confer with the defendants, now seeking the Court's permission: (1) to add two claims to its infringement contentions; (2) to add allegations of infringement under the doctrine of equivalents; and (3) to add citations to source code and other documentation in its infringement contentions.

This Court's policy requires early disclosure of a party's theory of the case, and requires a party to prove that it has good cause to make any changes to that theory (for instance, if it wants to assert new claims or rely on the theory of doctrine of equivalents instead of literal infringement), especially when it seeks to makes those changes late in the case. As with its previous motions, however, Nuance has failed to show why its proposed changes are necessary or that it acted in good faith and with diligence.

For instance, two years after selecting claims, and at the close of discovery, Nuance now seeks to add two new claims (a subset of the thirteen claims it tried to sneak in a month ago) with the barest explanation for why changing claims is necessary. Nuance asserts—without any evidence—that adding these new claims is necessitated by information that the defendants produced during discovery. But even a cursory glance at Nuance's amended infringement contentions for these new claims reveals that Nuance is relying on the same basic functionality of the accused products that it cited before. In other words, Nuance is not adding new claims because the defendants recently produced new non-public evidence that contradicts Nuance's previous understanding of the way the defendants' products work. Instead, Nuance has simply changed its mind concerning the claims it wants to assert in the case.

Similarly, Nuance has no good cause to amend its contentions to add allegations under the doctrine of equivalents. Nuance has not alleged, for example, that the software code and other non-public documentation show that the accused products do not perform in the way the public documentation (and Nuance's prior infringement contentions) describe them. To the contrary, as already explained, Nuance's contentions describe the same basic functionality its previous contentions described. It appears that Nuance wants to add the doctrine of equivalents contentions as a belt-and-suspenders approach to infringement, perhaps because it realizes it cannot prove literal infringement. Whatever its real reasons for adding these allegations, it is far too late for Nuance to change its infringement theories now.

Finally, Nuance states it is merely adding several non-public citations to its infringement contentions in order to "provide additional detail and specificity." Dkt. #419, Motion at 5. If that were true, the defendants would not object; but as with Nuance's other excuses for its late submissions, this one has no factual basis. Most significantly, Nuance does not even attempt to tie its new citations to the functionality accused in its prior infringement contentions, which suggests that Nuance may be attempting to substantively change its infringement contentions by citing to software code that describes *other* functionality, instead of simply citing where in the software code the previously identified functions can be found. Either the new citations show that the accused software performs the recited functionality (in which case the defendants would not object) or the new citations relate to new functionality never before mentioned in Nuance's earlier contentions (in which case the new citations would improperly expand the scope of the contentions). Unfortunately, Nuance provides no information that the Court can use to perform this critical analysis.

In sum, Nuance was not diligent in seeking to add claims of the '404 and '094 patents or to amend its infringement contentions under the doctrine of equivalents, and it is much too late for Nuance to substantively change its infringement contentions under the pretense of merely adding supporting citations to non-public documentation. Allowing these amendments after the close of fact discovery would seriously prejudice the defendants, so the Court should deny the Motion.

## II. BACKGROUND[1]

### A. Nuance's Infringement Contentions

On April 3, 2009, Nuance served its initial infringement contentions on nearly 150 claims from eight patents. *See* Dkt. #366-2. On May 24, 2010, Nuance, in response to a Court order requiring it to narrow its case, selected twenty representative claims from six patents, including claims 53, 62, 64 of the '161 patent and claims 2, 24, 50, 74 of the '094 patent. *See* Dkt. #351-4. On July 23, 2010, Nuance served its second amended infringement contentions directed to the representative claims of the '342, '489, and '009 patents (the "First Group"). On September 15, 2011, Nuance served its third amended infringement contentions on all six patents-in-suit, and this exceeded the scope the Court authorized in its Scheduling Order (Dkt. #339) because Nuance—without any notice—substituted claim 52 for claim 53 in the '161 patent and claim 1 for claim 24 in the '094 patent. *See* Dkt. #351-3 at 3.

In the infringement contentions it served in 2009, 2010, and 2011, Nuance did not identify any limitation infringed under the doctrine of equivalents. Rather, it provided a blanket allegation at the beginning of its infringement contentions, alleging that: "[t]o the extent that the ABBYY Accused Products do not literally infringe each of the asserted claims, Nuance contends that ABBYY Accused Products infringe the Asserted Claims under the doctrine of equivalents." *See* Dkt. #366-2 at 4 of 66; Dkt. #351-3 at 18 of 24.

On February 6, 2012, the Court struck Nuance's third amended infringement contentions "except for the updated contentions authorized by the Court for the '161 patent (claims 62 and 64), '404 patent (claims 15, 19, and 25), and '094 patent (claims 2, 50, and 74) as well as any references to products other than those originally accused." Dkt. #382 at 2. The Court denied the defendants' motion to strike Nuance's references to the doctrine of equivalents as premature. *Id.* at 3. It explained:

---

[1] This Opposition only recites facts relevant to the issues raised. The defendants provided a detailed history of these matters in their prior Opposition to Nuance's motion for leave to amend infringement contentions. *See* Dkt. #412, 417.

> [The] time this issue will be ripe for the Court's review is if Plaintiff seeks to amend its disclosure and expand its claim under the doctrine of equivalents. It will then need to seek leave from the Court, which will have to determine if there is good cause for any amendments.

*Id.* (footnotes omitted).

In mid-March 2012, Nuance approached ABBYY with another round of amendments of the infringement contentions, seeking to add, among others, claim 52 of the '161 patent and claim 1 of the '094 patent. *See* Declaration of Erik Puknys in Support of Defendants' Opposition to Nuance's Motion for Leave to Amend its Patent Rule 3-1 Infringement Contentions ("Puknys Decl."), ¶ 5 and Ex. 2. Nuance did not mention any plan to amend its infringement contentions under the doctrine of equivalents. *Id.*, ¶ 6 and Ex. 2. ABBYY objected to the addition of any claims.

On March 26, 2012, Nuance filed a joint stipulation regarding the amendment of the infringement contentions for the First Group. *See* Dkt. #396. On April 11, 2012, Nuance served its Fourth Amended Infringement Contentions on the representative claims of the First Group, adding the agreed-upon newly accused products. Again, Nuance did not identify any limitation of any claim that it believes is present under the doctrine of equivalents.

On April 30, 2012, Nuance again moved to amend its infringement contentions. Dkt. #407. In that motion, Nuance alleged that it sought only to add five products. *Id.* Without telling the Court, however, Nuance buried infringement contentions for thirteen new claims, including claim 52 of the '161 patent and claim 1 of the '094 patent, in the middle of nearly twenty exhibits. Dkt. #409-11, 409-13, 409-14, 409-15, and 409-18 (Exhibits 11, 13, 14, 15, and 18 attached to Declaration of Holly B. Baudler).[2] Again, Nuance did not seek leave to add infringement contentions under the doctrine of equivalents.

---

[2] In its Reply Brief in support of its previous motion to amend infringement contentions, Nuance alleged that "ABBYY and Lexmark both understood that the issue of claim substitution for the selected claims would be, and now has been, included in a completely different motion." Dkt. #423 at 1. Presumably, Nuance was referencing the present motion in its previous Reply. Despite Nuance's attempt to shift blame for impropriety onto the defendants, however, neither ABBYY nor Lexmark understood that the issue of claim substitution would be addressed in a subsequent motion, and Nuance did not cite any emails or other communication to support its allegation. Moreover,

(continued...)

**B.     Nuance's Proposed Amendments of the Infringement Contentions**

After the defendants explained that Nuance attempted to circumvent the Local Patent Rules and the Court's Order in its last motion for leave (*see* Dkt. #412, 417), Nuance filed this Motion two days later. In its latest infringement contentions, the basic description of the functionality for the accused products that allegedly correspond to the claim limitations has mostly remained unchanged. *See generally* Dkt. #429, Exhibits 1-15 to the May 16, 2012 Declaration of Abraham DeLaO in Support of Nuance Communications, Inc.'s Motion for Leave to Amend Its Patent Rule 3-1 Infringement Contentions ("DeLaO Declaration"). Nevertheless, Nuance is seeking to make the following changes: (1) add claim 1 of the '094 patent (*id.*, Ex. 4 at 3-6) and claim 52 of the '161 patent (*id.*, Ex. 6 at 15) and; (2) amend its infringement contentions to add allegations under the doctrine of equivalents for twenty-two claim limitations (*see, e.g.*, *id.*, Ex. 4 at 6); and (3) add citations to source code and other documentation (*see, e.g.*, *id.*).

According to Nuance, these changes have been made necessary by certain non-public documentation produced by the defendants. Dkt. #419, Motion at 2. Beyond that, however, Nuance does not attempt to show *why* the defendants' production of non-public information necessitates any change.

For instance, Nuance does not allege that anything produced by the defendants after Nuance prepared its infringement contentions contradicted the evidence Nuance had previously relied on or caused Nuance to change its understanding of the allegedly infringing functionality of the accused products. To the contrary, most of the accused functionality described by the infringement contentions remains unchanged.

Nor does Nuance explain how the new documents it cites in the proposed amendments relate to the allegedly infringing functionality. Thus, although Nuance states that the new citations in its proposed contentions merely "provide additional detail and specificity regarding its contentions" (Dkt. #419, Motion at 5), Nuance fails to substantiate that statement. Accordingly, there is no way of

---

(…continued)
Nuance's allegation is belied by the fact the present motion addresses only two new claims, while the prior motion attempted to add thirteen new claims without informing the Court.

1  knowing whether Nuance is merely corroborating its prior infringement contentions (as it asserts) or
2  if it is substantively changing its infringement contentions through the citation of software code
3  having nothing to with the previously accused functionality (which it may not do now, after the close
4  of discovery).

5  **III.      ARGUMENT**

6         **A.      A Party May Amend Infringement Contentions Only if It Has Good Cause**

7         "Amendment of the Infringement Contentions . . . may be made only by order of the Court
8  upon a timely showing of good cause." Patent L.R. 3-6. "Unlike the liberal policy for amending
9  pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to
10 prevent the 'shifting sands' approach to claim construction." *LG Elecs. Inc. v. Q-Lity Computer Inc.*,
11 211 F.R.D. 360, 367 (N.D. Cal. 2002) (citation omitted). Indeed, Patent L.R. 3-6 aims to prevent the
12 exact maneuver Nuance employs in order to expand its case at the close of discovery. *See Golden*
13 *Hour Data Sys., Inc. v. Health Servs. Integration, Inc.*, No. C 06-7477 SI, 2008 U.S. Dist. LEXIS
14 75495, *13 (N.D. Cal. July 1, 2008) (explaining that the Patent Local Rules were designed "to
15 prevent the parties from shifting their theories late in discovery, leaving the opposing party with little
16 time to conduct discovery on a new theory") (citation omitted).

17        In determining whether a party has good cause required by Patent L.R. 3-6, the Court
18 considers "first whether the moving party was diligent in amending its contentions and then whether
19 the non-moving party would suffer prejudice if the motion to amend were granted." *Acer, Inc. v.*
20 *Tech. Props. Ltd.*, Nos. 5:08cv877, 5:08cv882, and 5:08cv5398, 2010 U.S. Dist. LEXIS 142472, *11
21 (N.D. Cal. Sept. 10, 2010) (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355,
22 1366-68 (Fed. Cir. 2006)). "The party seeking to amend its contentions bears the burden of
23 establishing diligence." *Id.* at *13 (citing *O2 Micro*, 467 F.3d at 1366-67).

24        In *O2 Micro*, the Federal Circuit upheld the district court's finding of a lack of diligence
25 where the movant "waited almost three months . . . to serve its proposed amended contentions and
26 two more weeks to formally move to amend." 467 F.3d at 1367. *See also Acer*, 2010 U.S. Dist.
27 LEXIS 142472 at *15 (suggesting a lack of diligence where the movant did not seek to amend its
28 infringement contentions until "three months after it began its review [of the accused products] and

three weeks after that review was completed"). In some case, a delay of only a month may suggest a lack of diligence. *See Oracle Am., Inc. v. Google Inc.*, No. 10-03561 WHA, 2011 U.S. Dist. LEXIS 87251, *11-13 (N.D. Cal. Aug. 8, 2011) (finding a lack of diligence where the movant "did not seek leave to move to formally amend its invalidity contentions until a month after [the adverse] claim constructions were set").

### B.  Nuance Did Not Exercise Diligence in Seeking the Amendment

#### 1.  Nuance Failed to Exercise Diligence in Seeking to Add Claims

Nuance did not diligently seek to add claim 52 of the '161 patent and claim 1 of the '094 patent. It selected the representative claims in May 2010, but waited for two years to add these claims. Nuance does not address the issue of diligence, stating only that it seeks to add claims "based on information developed during discovery" without explaining *how* any recent discovery relates to the substance of its contentions, and despite the fact that its descriptions of the infringing functionality in these two claims remain essentially unchanged. *See, e.g.,* DeLaO Declaration, Dkt. #429, Ex. 4 at 3-6 (claim 1 of the '094 patent); *id.,* Ex. 6 at 15 (claim 52 of the '161 patent).

Indeed, the history of Nuance's efforts to add these claims exposes the falsity of this latest attempt to justify the addition of these claims on recently produced information. Specifically, Nuance first attempted, without seeking leave, to include these two claims in its third amended infringement contentions served last September, so if discovery necessitated the addition of these claims, Nuance obviously had that information eight months ago.

#### 2.  Nuance Failed to Exercise Diligence in Seeking to Add Doctrine of Equivalents Allegations

Nuance also failed to exercise diligence in seeking to amend its infringement contentions to add infringement theories under the doctrine of equivalents. Patent L.R. 3-1(e) requires any infringement contentions to state "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." This Court has strictly applied this Rule and rejected attempts to assert claims under the doctrine of equivalents with a "catch-all statement" of the equivalency. *See, e.g.*, *Optimumpath, LLC v. Belkin Int'l, Inc.*, No. 09-01398 CW, 2011 U.S. Dist. LEXIS 41634, *24-25 (N.D. Cal. Apr. 12, 2011). In

1  its initial infringement contentions served in April 2009, Nuance alleged only that "ABBYY
2  Accused Products infringe the asserted claims under the doctrine of equivalents." Dkt. #366-2 at 4 of
3  66. Such a blanket statement failed to comply with Patent L.R. 3-1(e). The allegation remained
4  deficient throughout Nuance's amended infringement contentions in 2010 and 2011. Indeed, in all
5  the initial and amended contentions, Nuance failed to identify even a single limitation it believed
6  was present under the doctrine of equivalents.

7  After Nuance served its third amended infringement contentions, which, again, fell far short
8  of the requirement of Patent L.R. 3-1(e) to identify each limitation of each claim thought to be
9  present under the doctrine of equivalents, the defendants moved to strike from the contentions any
10 reference to infringement under the doctrine of equivalents. Acknowledging that Nuance only
11 provided a "blanket statement," the Court decided that a ruling to strike the references to the doctrine
12 of equivalents was not necessary at that time. Dkt. #382 at 2-3. It explained that:

> If Plaintiff attempts to rely on this doctrine at a later date, then Defendants may move to exclude any references to the doctrine due to Plaintiff's failure to fully disclose its theories under a limitation-by-limitation analysis as required by P.R. 3-1(e). Another time this issue will be ripe for the Court's review is if Plaintiff seeks to amend its disclosure and expand its claim under the doctrine of equivalents. It will then need to seek leave from the Court, which will have to determine if there is good cause for any amendments.

17 *Id.* at 3 (footnotes omitted).

18 More than three months have passed since the Court notified Nuance of its deficient
19 infringement contentions under the doctrine of equivalents, and during that time, Nuance sought
20 other amendments, but ignored the doctrine of equivalents. In March, Nuance approached ABBYY
21 with the proposal of adding accused products and asserted claims, and served its fourth amended
22 infringement contentions on the representative claims of the First Group to add agreed-upon accused
23 products. In April, Nuance moved to amend its infringement contentions, again, to add products and
24 claims. At no time during the three months after the Court's February Order did Nuance advise the
25 defendants of any plan to amend its infringement contentions under the doctrine of equivalents or
26 seek the Court's permission to so amend. Such delay is the opposite of diligence.

27 Presumably, Nuance had a theory of infringement under the doctrine of equivalents when it
28 first generically alleged infringement by equivalents in April 2009 using boiler-plate allegations in

1  violation of this Court's rules. *See, e.g.*, *Optimumpath*, 2011 U.S. Dist. LEXIS 41634, *23-26;
2  *Rambus Inc. v. Hynix Semiconductor, Inc.*, No. 05-00334 RMW, 2008 U.S. Dist. LEXIS 123187,
3  *41-42 (N.D. Cal. Dec. 29, 2008); *MEMC Electronic Materials v. Mitsubishi Materials Silicon
4  Corp.*, No. 01-4925 SBA, 2004 U.S. Dist. LEXIS 31314, *11-12 (N.D. Cal. Mar. 1, 2004). Now,
5  Nuance alleges that it suddenly needs to assert the doctrine of equivalents for twenty-two claim
6  limitations because of "information developed in discovery." But again, that statement is false. For
7  example, for the limitation of "linking the document to the first electronic folder if the attribute data
8  extracted from the document and stored in the data structure matches the category criteria" in claim
9  50 of the '094 patent, Nuance seeks to add infringement allegation under the doctrine of equivalents.
10 *See* DeLaO Declaration, Dkt. #429, Ex. 3 at 17. To support this proposed amendment, Nuance cites
11 LXK-NUANCE 089037 and LXK-NUANCE 089084. *Id.* at 18. Lexmark produced these two
12 documents to Nuance, however, almost three years ago, on July 21, 2009. Puknys Decl., ¶ 3 and Ex.
13 1. Nuance is obviously using the defendants' more recent production as a pretense to excuse its
14 consistent failure to follow this Court's rules.
15     Nuance's lengthy delay does not evince "a timely showing of good cause," as Patent L.R. 3-6
16 requires, and on that basis alone the Court should deny the Motion.

17         **3.     Nuance Fails to Support Its Representation That It Is Simply Providing
                    More Detail to Its Existing Contentions by Adding Citations to the
18                  Software**

19     The defendants would not object to the addition of supporting citations to documentation *if*
20 Nuance demonstrated that the added citations merely show where in the software code Nuance
21 believes the accused functionality is performed. But Nuance fails to show that this is all it seeks to
22 do, either by providing explanations of the citations it seeks to add or by providing a declaration
23 from an expert confirming this is all it seeks to do. Without any attempt to tie the new citations to the
24 pre-existing infringement contentions, it is impossible for this Court (and the defendants) to know
25 whether the citations simply provide more detail or if they amount to a wholesale change in
26 Nuance's infringement theories.
27     Furthermore, in the proposed claim charts, Nuance provide new cites to documents produced
28 as far back as 2009. For example, Nuance cites numerous "new" documents in its proposed claim

1  chart alleging that Lexmark's Document Management Platform infringes claims of the '094 patent.
2  *See* DeLaO Declaration, Dkt. #429, Ex. 3. All of the allegedly new documents, however, were
3  produced in 2009. Puknys Decl., ¶ 3 and Ex. 1. And even Nuance concedes that it has had access to
4  the defendants' source code since December 2011 or January 2012. Dkt. #419, Motion at 3. Nuance
5  blames the defendants for Nuance's lack of diligence because the defendants limited the source code
6  review "to weekdays during regular business hours." *See id.* at 4. Nuance admits, however, that it
7  only inspected the source code for a total of 18 days. *Id.* Thus, Nuance could have sought leave to
8  add citations to the source code by January or February, not May. The delay of over three months,
9  which Nuance fails to explain, does not support Nuance's self-proclaimed diligence. And, in any
10 event, since these new citations did not require Nuance to change the functionality it accuses of
11 infringement, it makes no difference whatsoever *when* these documents were produced.

12 **4.     Nuance's Lack of Diligence Alone Justifies a Denial of Its Motion**

13       In determining whether there is good cause as required by Patent L.R. 3-6, the Court need not
14 consider whether the nonmoving party would suffer prejudice if the moving party has not been
15 diligent. *Acer*, 2010 U.S. Dist. LEXIS 142472 at *11. "[U]nder Patent Local Rule 3-6, if there is no
16 showing of diligence, then a court need not even entertain whether the amendment would prejudice
17 the nonmoving party." *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, No. C-09-3304 EMC, 2011 U.S.
18 Dist. LEXIS 131688, *7 (N.D. Cal. Nov. 15, 2011). Indeed, the Federal Circuit has stated that after
19 finding lack of diligence, courts have "no need to consider the question of prejudice." *O2 Micro*, 467
20 F.3d at 1368. Nuance cannot demonstrate diligence, so the inquiry should end here.

21 **C.     Allowing Nuance to Amend Its Contentions Would Prejudice ABBYY**

22       Although the Court does not need to reach this issue, given Nuance's lack of diligence, the
23 prejudice from the amendments is enough in itself for the Court to deny Nuance's motion to amend.
24       First, Nuance's allegation that claim 52 of the '161 patent merely substitutes for claim 53,
25 and claim 1 of the '094 patent merely substitutes for claim 24, is misleading. *See* Dkt. #419, Motion
26 at 6. The Court previously struck infringement contentions for all claims in the '161 patent except
27 for claims 62 and 64, so claim 53 is no longer in the case. Dkt. #382 at 2. Likewise, the Court struck
28 the infringement contentions for all claims in the '094 patent except for claims 2, 50, and 74, so

1  claim 24 is no longer in the case either. *Id.* Thus, these amendments do not merely substitute one
2  claim for another for these two patents, but *add* to the total number of claims the defendants must
3  address.

4  Moreover, because claim 24 of the '094 patent depends from claim 1, it has several
5  limitations that claim 1 does not have, so Nuance cannot deny that claim 1, the claim Nuance
6  proposes as the substitute for claim 24, is broader than claim 24. *See* 35 U.S.C. §112, ¶ 4. Although
7  Nuance also argues that claim 1 has the same scope as claim 50, claim 50 has limitations claim 1
8  does not, such as "predefining category criteria for a first electronic folder, wherein the first
9  electronic folder is one of the electronic folders which make up the hierarchy of electronic folders."
10  Thus, Nuance's "merely" substituting claim 24 with claim 1 of the '094 patent broadens the scope of
11  its infringement case against the defendants.  Such broadening will cause significant prejudice to the
12  defendants, requiring them to review and revise both invalidity and non-infringement strategies after
13  the close of fact discovery, when no additional evidence can be introduced, and while the parties are
14  preparing and taking depositions of all technical witnesses.

15  Similarly, Nuance's proposed "substitution" of claim 53 with claim 52 of the '161 would
16  change the scope of Nuance's infringement allegations. Claim 53 provides that the "step of
17  processing comprises performing handwriting recognition processing," while claim 52 requires that
18  "said step of processing comprises performing OCR processing." Although these two processes may
19  appear similar to a layperson, they involve very different technologies and implicate different parts
20  of ABBYY's source code. Moreover, even Nuance concedes that "OCR processing" is "not
21  expressly found in any other asserted claim of the '161 patent" (Dkt. #419, Motion at 7), admitting
22  that its desired substitution would change the scope of its allegations against the defendants.

23  Nuance also contends that because the First Group relate to the OCR technology, adding
24  claim 52 of the '161 would not prejudice the defendants (*id*), but this argument is disingenuous. Both
25  claims 52 and 53 depend from claim 36, which defines a method of distributed-computing and
26  document processing. Claims 52 and 53 recite two distinct methods of employing that method: one
27  uses OCR processing (*i.e.*, recognition of machine printing) while the other uses handwriting
28

DEFENDANTS' OPPOSITION TO NUANCE'S MOTION
FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS
Case No. CV 08-02912-JSW

1  recognition processing. It is irrelevant whether different claims in unrelated patents in a different
2  group also recite OCR processing. The claims-at-issue in the '161 patent do not.
3      Allowing Nuance to amend its infringement contentions under the doctrine of equivalents
4  would also prejudice the defendants. Currently, the defendants believe this case does not involve
5  infringement under the doctrine of equivalents because the allegations in the infringement
6  contentions are deficient. *See* Section III.B.2; Dkt. #382 at 3. Allowing Nuance to attempt to salvage
7  its deficient allegations of infringement under the doctrine of equivalents would force the defendants
8  to prepare new defenses, both to validity and infringement, and may require additional discovery.
9  Indeed, it is settled law that the scope of equivalents cannot ensnare the prior art. *See Wilson*
10 *Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 684 (Fed. Cir. 1990) (holding
11 that "since prior art always limits what an inventor could have claimed, it limits the range of
12 permissible equivalents of a claim"). Here, the defendants did not identify any prior art to address
13 the equivalents issue because Nuance never alleged or identified any limitations were infringed
14 under the doctrine of equivalents until its latest proposed amendments. Again, Nuance cannot deny
15 the prejudice to the defendants from this.
16      Finally, allowing the new citations adds uncertainty because Nuance does not explain what
17 these new citations have to do with the extant allegations. Nuance cannot argue there is no prejudice
18 when it will not even explain what its changes are.

19 **IV.   CONCLUSION**

20     Although Nuance insists that it "is not seeking to change or expand its infringement case,"
21 (Dkt. #419, Motion at 2, emphasis in original), of course it is. There is no way to describe the two
22 new claims and twenty-two new doctrine-of-equivalents allegations other than as an expansion of
23 Nuance's infringement case. Moreover, if the added citations to defendants' non-public source code
24 and other documents did, in fact, simply point out where the source code performs the functionality
25 Nuance's alleges to correspond to the claim limitations, one would expect Nuance to provide some
26 evidence (such as an expert declaration) to substantiate such an assertion. But, as shown above,
27 Nuance's attempt to rely on defendants' production of source code and other non-public information
28 as the excuse for changing its contentions is baseless. It makes no difference when Nuance had

1 access to the defendants' non-public information because Nuance does not even attempt show how
2 that information relates to Nuance's proposed amendments.
3      Nuance's lengthy delay in moving to amend infringement contentions demonstrates lack of
4 diligence and prejudices the defendants. Therefore, the defendants respectfully request that the Court
5 deny Nuance's motion for leave to amend its infringement contentions.

7 Dated: May 30, 2012                FINNEGAN, HENDERSON, FARABOW,
                                       GARRETT & DUNNER, LLP

10                                   By: /s/ *Erik R. Puknys*
                                         Erik R. Puknys
11                                       Attorneys for Defendants
                                         *ABBYY USA Software House, Inc., ABBYY*
12                                       *Software, Ltd., ABBYY Production LLC, and*
                                         *Lexmark International, Inc.*