UNITED STATES DISTRICT COURT

Northern District of California

NUANCE COMMUNICATIONS, INC.,

    Plaintiff,

  v.

ABBYY SOFTWARE HOUSE *et al.*,

    Defendants.

_____/

No. C 08-02912 JSW (MEJ)

**ORDER RE: PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS (DKT. NOS. 407 AND 419)**

## INTRODUCTION

Currently pending before the Court are two motions from Plaintiff Nuance Communications in which it asks for permission to amend its infringement contentions. In the first motion, Nuance seeks to specify in its contentions that the accused products in this matter include (1) Defendant ABBYY USA Software House's products: FlexiCapture Engine and TouchTo, and (2) Defendant Lexmark International's three recently acquired products: ImageNow, Nolij Web, and Brainware Distiller. Dkt. No. 407. In the second motion, Nuance seeks to change its infringement contentions by (1) substituting two of the representative claims in this matter, (2) adding allegations under the doctrine of equivalents, and (3) adding citations to source code and other documentation. Dkt. No. 419. ABBYY and Lexmark have filed oppositions to Nuance's motions (Dkt. Nos. 412, 417, and 432), to which Nuance has filed replies (Dkt. Nos. 422, 423, and 434). Having considered the papers filed by the parties and the arguments of counsel, the Court finds a hearing unnecessary and VACATES the June 28, 2012 hearing. The Court rules as follows.

## LEGAL STANDARD

Pursuant to Patent Local Rule (L.R.) 3-6, infringement contentions may only be amended "by order of the Court upon a timely showing of good cause." In determining whether there is good

cause to amend, the Court first considers "whether the moving party was diligent in amending its contentions and then whether the non-moving party would suffer prejudice if the motion to amend was granted." *Acer, Inc. v. Tech. Props. Ltd.*, 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010) (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-68 (Fed. Cir. 2006)). "The party seeking to amend its contentions bears the burden of establishing diligence." *Id.* at *4. "Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *Id.* (citing *LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002)).

**DISCUSSION**

The Court discusses each of Nuance's requests to amend its infringement contentions in turn below.

A. ABBYY's Accused Products[1]

Nuance first seeks to specify in its infringement contentions that ABBYY's FlexiCapture Engine and TouchTo products are accused products in this action. In its original infringement contentions, served on ABBYY in April 2009, Nuance accused "each product that implements the OCR algorithms and/or ICR algorithms used in the ABBYY FineReader Engine. . . ." Dkt. No. 409, Baudler Decl., Ex. 4. Nuance contends that it is not expanding its infringement case and only seeking to "provide additional detail and specificity regarding the accused products" by explicitly including the FlexiCapture Engine and TouchTo products in its contentions. Dkt. No. 407 at 5.

ABBYY argues that Nuance's request for leave to amend comes far too late. Both the FlexiCapture Engine and TouchTo products were publically released in 2009, and Nuance offers no explanation as to why it waited more than three years to amend its infringement contentions to

---

[1] The Court notes that Defendants accuse Nuance of improperly burying new claims in its proposed amendments to the infringement contentions. Nuance, however, has explained that its first motion is only seeking to add accused products to its contentions and it is not attempting to change the presently selected claims, which is instead one of the subjects of Nuance's second motion. The Court therefore does not consider the issue of new claims with respect to Nuance's first motion.

2

specifically include these products. Nuance counters in its reply that it "believes these products are encompassed within its original contentions, but ABBYY has forced Nuance to engage in motion practice in order to identify them more precisely." Dkt. No. 423 at 2. If that is the case, then Nuance may rely on its original contentions with respect to the FlexiCapture Engine and TouchTo products. If ABBYY moves to exclude any references to these products during trial, it will be up to the presiding judge to determine whether Nuance properly disclosed the products in its original contentions.[2] As for whether Nuance can amend its contentions at this stage of the proceedings to explicitly include FlexiCapture Engine and TouchTo as accused products, this request is DENIED. Nuance has the burden of establishing it was diligent in seeking leave to amend, and it cannot meet this burden considering it waited more than three years after the release of the products at issue to bring this motion. *See Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 508 (N.D. Cal. 2011) ("under Patent Local Rule 3–6, if there is no showing of diligence, then a court need not even entertain whether the amendment would prejudice the nonmoving party").

B. Lexmark's Accused Products

Second, Nuance seeks to amend its infringement contentions to include three recent products acquired by Lexmark. According to Nuance, Lexmark only acquired Nolij Web and Brainware Distiller within the past few months. Dkt. No. 407 at 5. Perceptive Software, which developed ImageNow, was an original equipment manufacturer (OEM) of Nuance's until May 2010 when it was acquired by Lexmark. Dkt. No. 408, Weideman Decl., ¶¶ 2-3. Nuance attempted to negotiate an agreement with Perceptive Software, which was acting as a separate business unit of Lexmark, so that it could continue the OEM partnership without affecting this litigation. *Id.* ¶ 3. These

---

[2] The presiding judge will have to consider whether Nuance's original infringement contentions complied with Patent L.R. 3.1(b), which provides that patentees must include the following in their contentions: "Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process."

3

negotiations ended in late 2011 without an agreement. *Id.* ¶ 4. Nuance argues that the recent acquisition of these infringing products (ImageNow, Nolij Web, and Brainware Distiller) should permit it to amend its contentions to include these products, particularly because the newly accused products will not change the substance of the infringement case. Dkt. No. 407 at 6-7.

Lexmark contends that Nuance has not been diligent in seeking leave to amend its infringement contentions to include the above products. With respect to the ImageNow product from Perceptive Software, the Court agrees. Nuance has known that ImageNow may potentially be an accused product since May 2010 when its developer was purchased by Lexmark, and it was Nuance's decision to attempt to reach an OEM partnership agreement with Perceptive Software rather than amend its infringement contentions at that time. Nuance was also aware in late 2011 that a partnership agreement was not forthcoming, but it waited until May 30, 2012 to request leave to amend from the Court. Nuance offers no explanation for this delay. The Court consequently finds that Nuance has not met its burden to establish diligence, and its request to add ImageNow to its contentions as an accused product is DENIED.

This finding, however, does not apply to the other newly acquired products: NolijWeb and Brainware Distiller. Lexmark argues that Nuance has been aware about these products for some time since they have been on the market for over a decade. Dkt. No. 412 at 2-3. But this argument is misplaced. Even if Nuance did know about these products, it could not include them in its infringement contentions because they were not owned by Lexmark. As soon as Lexmark acquired NolijWeb and Brainware Distiller, Nuance moved to amend its contentions so that they would be included as accused products. This is justifiable. As Nuance points out, if this was not the case, "defendants could easily avoid infringement claims by acquiring new technology during the pendency of a patent suit, and migrating their offerings towards the newly acquired technology and away from the accused products as the case draws nigh to trial." Dkt. No. 422 at 2.

The Court is also not persuaded by Lexmark's argument that it will be seriously prejudiced by the addition of NolijWeb and Brainware Distiller as accused products. Lexmark explains that fact discovery closed on June 1, 2012 and any amendments may derail the case management

4

schedule, require additional claim construction, and delay trial. But Lexmark does not specifically explain why the case management schedule would have to be changed or why additional claim construction would be needed. If that was the case and Lexmark did in fact need to conduct further discovery, then it could request to reopen discovery from the presiding judge. Accordingly, considering that Nuance was diligent in seeking leave to amend its infringement contentions after Lexmark acquired NolijWeb and Brainware Distiller, and Lexmark has not shown that it would suffer actual prejudice stemming from any amendment, Nuance's request for leave to amend is GRANTED with respect to these two products.

C. Substitution of Claims and Doctrine of Equivalents

Nuance then seeks, by way of its second motion, to substitute two of the representative claims to be tried.[3] With respect to the '161 patent, Nuance wishes to substitute claim 52 for the initially selected claim 53. With respect to the '094 patent, Nuance wishes to substitute claim 1 for the initially selected claim 24. Nuance contends that it is not seeking to change or expand its infringement case, but only to provide complete disclosure reflecting the non-public information it has ascertained through discovery, particularly through its review of the products' source code at Defendants' counsel's office (which did not begin until January 18, 2012).

Nuance's request to substitute the above claims is DENIED. Nuance conclusory asserts that its recent review of the source code compels these substitutions, but it does not cite to any specific examples to corroborate this argument. Nuance's position is also contradicted by the fact that it attempted to substitute these two claims in its third amended infringement contentions that were served on ABBYY in September 2011, well before the source code was even produced. Based on this, the Court finds that Nuance's decision to wait until May 16, 2012 to seek permission to substitute these claims does not satisfy its burden to establish diligence.[4]

---

[3] Nuance selected the current representative claims before any discovery had been conducted.

[4] In its reply, Nuance points out that ABBYY has recently produced new documents and source code at the last minute, which should make its arguments regarding diligence and prejudice

5

1    A similar finding also applies to Nuance's request to amend its infringement contentions to
2 assert more detailed allegations under the doctrine of equivalents for 22 claim limitations.[5]  Nuance
3 claims this is necessary due to "the non-public technical information [that] recently [became]
4 available through discovery."  Dkt. No. 419 at 5.  Nuance again provides no support for this
5 conclusory statement.  Moreover, as ABBYY points out, it does not appear to be accurate for all of
6 the proposed changes.  For instance, Nuance's proposed amendment to assert a more detailed
7 doctrine of equivalents allegation with respect to claim 50 of the '094 patent is supported by only
8 two documents.  Dkt. No. 429, DeLao Decl., Ex. 3 at 17.  These documents, however, were
9 produced to Nuance almost three years ago on July 21, 2009.  Dkt. No. 433, Puknys Decl., ¶ 3.
10 Nuance does not provide a sufficient explanation for why its proposed amendments, based on
11 documents available years before it moved for leave to amend, satisfy its burden to establish
12 diligence.  Finding that it does not, the Court DENIES Nuance's request to amend its infringement
13 contentions with additional allegations under the doctrine of equivalents.

D.  New Citations to Source Code and Other Documentation

15    Lastly, Nuance seeks to amend its infringement contentions to disclose additional citations to
16 where it believes proof of infringement resides, which Nuance claims it is now able to do because it
17 has finally had the chance to review and inspect Defendants' source code and non-public technical
18 information.  ABBYY explains that it would not object to the addition of supporting citations if it
19 was certain that the citations did not amount to a wholesale change in Nuance's infringement
20 theories.  Dkt. No. 432 at 9.  ABBYY, however, claims that it cannot determine this because Nuance

---

"ring hollow."  Dkt. No. 434 at 1.  The Court does not consider these arguments because they are irrelevant to the issues in this dispute, and, more importantly, appear to be the subject of a joint discovery dispute letter between the parties.  *See* Dkt. No. 449.

[5]  As explained in the Court's previous order on Defendants' motion to strike, Patent L.R. 3-1(e) required Nuance to provide a limitation-by-limitation analysis of its claims if it was invoking the doctrine of equivalents.  Instead, Nuance only provided the following blanket statement in its infringement contentions: "To the extent that the ABBYY Accused Products do not literally infringe each of the asserted claims, Nuance contends that the ABBYY Accused Products infringe the asserted claims under the doctrine of equivalents."  Dkt. No. 382 at 2.

6

failed to provide an explanation of the citations it seeks to add. *Id.* Nuance counters that it did provide such an explanation because it "tied its new citations to its previous contentions by including previous citations and placing the new citations immediately beneath them." Dkt. No. 434 at 3. This dispute about whether Nuance has thoroughly explained its new citations highlights that ABBYY's objections to these amendments are premature. If ABBYY learns at a later point of this litigation that Nuance is relying on citations that changed Nuance's infringement theories without the Court's permission, ABBYY may then move the presiding judge to exclude those citations for not being properly disclosed. At this point, however, the Court GRANTS Nuance's request to amend its contentions to include additional citations.[6]

## CONCLUSION

As explained above, Nuance's requests for leave to amend its infringement contentions are GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

Dated: June 28, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

---

[6] This is subject to Nuance's representation to the Court that none of its new citations change its infringement theories. Once again, if ABBYY finds out that this is not the case, it shall have leave to file a motion before the presiding judge to strike any improper changes.