UNITED STATES DISTRICT COURT

Northern District of California

NUANCE COMMUNICATIONS, INC.,

        Plaintiff,

  v.

ABBYY SOFTWARE HOUSE *et al.*,

        Defendants.

No. C 08-02912 JSW (MEJ)

**ORDER RE PLAINTIFF'S MOTION FOR DISCOVERY ABUSE SANCTIONS (DKT. NO. 499)**

**INTRODUCTION**

Currently before the Court is Plaintiff Nuance Communications's motion seeking sanctions against Defendants ABBYY Software, ABBYY Production, and ABBYY USA Software House for discovery abuse. Dkt. No. 499. The issues raised by Plaintiff's motion were first brought to the Court's attention in a joint discovery dispute letter filed by the parties. Dkt. No. 449. In that letter, Plaintiff alleged that Defendants produced more than 100,000 pages of documents in the last three weeks of discovery and more than 10,000 pages after the close of discovery (when depositions were already underway). *Id.* at 2. Plaintiff claimed that this production contained some of the most relevant information released during the entire case, and it should have been produced much earlier in response to Plaintiff's previous discovery requests. *Id.* at 3. Plaintiff asked the Court for leave to file a motion for sanctions in which it would seek (1) an eight-week discovery extension; (2) an exclusionary order for late-produced documents; (3) an order requiring Defendants to reproduce witnesses for depositions and pay for these expenses; (4) issue preclusion sanctions with respect to

Plaintiff's trade dress claims; and (5) an award of attorneys' fees and costs for being required to file such a motion. *Id.* at 3.

Defendants' response in the joint letter alleviated the Court's concerns with respect to some of Plaintiff's allegations of discovery misconduct, but not all. Dkt. No. 458 at 1. For instance, as the Court pointed out in its order on the joint letter, Defendants never explained why they produced relevant e-mails from their CEO after fact discovery closed. *Id.* at 1. Because some questions about alleged discovery abuse remained unanswered, the Court granted Plaintiff's request for leave to file a motion for sanctions. *Id.* at 2. The Court, however, instructed Plaintiff that such a motion should only be filed if it was still warranted,[1] and noted that if the result of Defendants' conduct was that Plaintiff needed more time to conduct discovery, a request to reopen discovery would have to be filed before the presiding judge, the Honorable Jeffrey S. White. *Id.* at 2.

Plaintiff did not ask Judge White for a discovery extension. It also did not seek to conduct additional depositions. Instead, Plaintiff filed this motion for discovery sanctions. Based on essentially the same claims as those alleged in the joint discovery dispute letter,[2] Plaintiff asks this

---

[1] In the joint discovery dispute letter, Plaintiff provided that it had not yet had time to review all 50,000 pages of documents recently produced by Defendants, and that it may be required to take additional third party discovery (something that Plaintiff could not determine at that time because it was still reviewing documents). Dkt. No. 449 at 4. Plaintiff also conceded that Defendants indicated in meet and confer sessions that they would consider permitting additional depositions on specific issues raised by the untimely production. *Id.* at 4. From the Court's perspective, this meant that some of the prejudice caused by Defendants' recent production could be cured by Plaintiff after conducting a more thorough review of the documents and additional discovery, and for that reason the Court noted in its order that a sanctions motion should only be filed "**if [Plaintiff] still believes one is warranted**." Dkt. No. 458 at 2 (emphasis in original).

[2] In its motion, Plaintiff sums up its allegations as follows: "Here, Nuance requests that the Court impose sanctions on the ABBYY Defendants for their abusive discovery tactics. As discussed above, the Court instructed Defendants to produce documents in time to allow Nuance to prepare for depositions. But the ABBYY Defendants ignored this instruction and produced over 52,000 pages during the last week and after the close of fact discovery. The ABBYY Defendants produced over 14,500 of those pages after the close of discovery, including many highly relevant emails regarding trade dress and willfulness issues. The ABBYY Defendants failed to produce many of these documents until Nuance had already begun the deposition of Mr. Pakchanian, ABBYY Russia's corporate representative on trade dress." Dkt. No. 499 at 11.

2

Court to impose issue preclusion sanctions on several points, including some claim-determinative issues. Dkt. No. 499 at 22 (For instance, Plaintiff requests the following sanction: the "jury should be instructed that, as a sanction for discovery misconduct, it is established that ABBYY Russia copied Nuance's trade dress). Plaintiff also seeks an order excluding any late-produced document (unless it is introduced by Plaintiff), and reimbursement for the attorneys' fees and costs it incurred in filing the sanctions motion. Defendants oppose Plaintiff's entire request for sanctions, reiterating its position from the joint discovery dispute letter that all of Plaintiff's "allegations of discovery misconduct are based on misrepresentations, exaggerations, and omissions of critical facts" that are only "wasting this Court's time." Dkt. No. 515 at 2. Having thoroughly considered the parties' briefs and supporting evidence, the Court hereby GRANTS IN PART and DENIES IN PART Plaintiff's motion for sanctions for the reasons explained below.

**DISCUSSION**

The Court first addresses the crux of Plaintiff's request in this motion: issue preclusion sanctions.[3] Specifically, Plaintiff seeks the Court to order the following relief:

- The jury should be instructed that, as a sanction for discovery misconduct, it is established that each of the ABBYY Defendants did, in fact, intentionally design its trade dress for its FineReader product based on the trade dress for Nuance's OmniPage product;
- The jury should be instructed that, as a sanction for discovery misconduct, it is established that ABBYY Russia copied Nuance's trade dress;
- The jury should be instructed that, as a sanction for discovery misconduct, it is established that [redacted];
- The jury should be instructed that, as a sanction for discovery misconduct, it is established that, if any ABBYY Defendant is found liable of infringement, such infringement shall be deemed willful; and
- The jury should be instructed that, as a sanction for discovery misconduct, it is established that ABBYY Russia induced all actions of ABBYY USA and its customers with respect to actions accused of patent and trade dress infringement.

---

[3] In their opposition, Defendants first argue that Plaintiff is not legally entitled to FRCP 37(b) sanctions because they have not violated any specific discovery order. This argument is denied. Even if the Court could not base an order for sanctions on Defendants' failure to abide by Judge White's order to "timely comply with their discovery obligations with sufficient time to permit Plaintiff time to prepare and complete the scheduled depositions," (Dkt. No. 410), the Court may issue sanctions pursuant to its inherent authority under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). *See also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 367-68 (9th Cir. 1992).

Dkt. No. 499 at 22-23.[4]

The Court finds that imposing such draconian sanctions would be inappropriate here. In its motion, Plaintiff cites to *Techsavies LLC v. WDFA Marketing, Inc.*, 2011 WL 723983, (N.D. Cal. Feb. 23, 2011), to support its request that any untimely produced documents from Defendants should be excluded from trial unless introduced by Plaintiff. Dkt. No. 499 at 21. The *Techsavies* court, however, also addressed whether the defendant's late production of documents warranted issue preclusion sanctions. *Id.* at *1-2. *Techsavies* held that "the sanctions Techsavies seeks are too broad. Granting them would be tantamount to giving Techsavies a directed verdict on many if not all of the damages issues in the case and Techsavies did contribute to these problems." *Id.* at *3. The *Techsavies* court went on to explain that "[d]iscovery disputes should be resolved soon after the problem appears, rather than by exclusionary and sanctions motions filed after discovery has terminated. Techsavies chose to file this motion for sanctions rather than take advantage of the discovery extension the Court offered." *Id.* at *3.

The *Techsavies* court's rationale applies to this dispute as well. By way of its motion, Plaintiff has shown that it would prefer to obtain a directed verdict on some of its claims rather than prevailing on the merits. The Court finds that this is improper under these circumstances. This is particularly true because most of the prejudice Plaintiff claims to have suffered could have been alleviated by requesting other relief, such as the opportunity to conduct additional discovery. For instance, Plaintiff contends in its reply that it is entitled to sanctions due to the prejudice caused by the following conduct of Defendants:

> (1) representing to this Court and Nuance that their last-minute productions were going to be irrelevant; (2) resisting an extension of the fact discovery deadline when they knew that they would produce highly relevant emails and other documents late; (3) producing thousands of highly relevant documents after the discovery deadline had passed and depositions were underway; and (4) refusing to delay depositions of ABBYY Russia and ABBYY Cyprus even though the Court had instructed them to "timely to comply with their discovery obligations with sufficient time to permit

---

[4] The Court's order does not discuss any confidential information that was redacted from the papers submitted by the parties, including the third proposed issue preclusion sanction above (which was redacted by the parties and therefore omitted from this order).

4

Plaintiff time to prepare and complete the scheduled depositions."

Dkt. No. 535 at 1. Plaintiff's reply then goes on to list four critical issues that it claims were conceded in Defendants' opposition and warrant the sanctions sought by Plaintiff: (1) Defendants admit that some e-mails and documents were produced after the close of fact discovery and were therefore unavailable for Plaintiff's FRCP (30)(b)(6) depositions; (2) Defendants fail to explain why they resisted a month-long discovery extension when they knew a significant amount of documents were going to be produced near the close of discovery; (3) Defendants did not comply with Judge White's order to produce documents with enough time for Plaintiff to prepare and complete scheduled depositions; and (4) Defendants do not explain why they refused to delay certain depositions.[5] *Id.* at 1-3. According to Plaintiff, these "four points alone establish a sufficient basis to sanction the ABBYY Defendants." *Id.* at 3.

All of the above "points," however, only show that Plaintiff could have mitigated the harm from any untimely production by simply conducting further discovery. In other words, if Plaintiff believed that the prejudice it suffered from Defendants' misconduct was losing its right to conduct discovery on many of its allegations — including exploring its claims during depositions — then the appropriate relief for this misconduct was not to ask for issue preclusion sanctions, but to seek a discovery extension so that it could actually have a chance to learn more about its claims. Plaintiff, however, did not ask Defendants to produce additional witnesses for depositions.[6] Plaintiff also never sought a discovery extension from Judge White after Defendants' untimely document production. Tellingly, Defendants' opposition provides that when Plaintiff deposed Defendants' corporate representative regarding their discovery compliance (two weeks after the joint discovery

---

[5] In the same manner, the Court notes that Plaintiff has never explained why it has not asked Judge White for permission to conduct further depositions at this time if it truly believes that these depositions would be so vital to its case.

[6] It is not clear from the parties' briefs whether they were permitted to conduct depositions after the close of fact discovery on June 1, 2012 (as they were doing), or they would have been required to ask Judge White to specifically reopen discovery for such depositions.

5

1  dispute letter) and Defendants' CEO (four weeks after the joint letter), Plaintiff did not ask one
2  single question about the late production of the CEO's e-mails, an issue that Plaintiff raises multiple
3  times in its sanctions motion. Dkt. No. 515 at 1. It consequently appears to the Court that Plaintiff
4  did not need to conduct further discovery and its claim of prejudice is exaggerated, a view that is
5  corroborated by this sanctions motion where Plaintiff has not asked to reopen discovery and has
6  instead requested issue preclusion sanctions. As the *Techsavies* court explained, such sanctions
7  would be too broad, especially considering that a discovery extension would have alleviated any
8  prejudice that was caused by Defendants' malfeasance, and, most importantly, permitted the Court
9  and a jury to resolve Plaintiff's trade dress claims on the merits. For these reasons, Plaintiff's
10 request for issue preclusion sanctions is DENIED.

11      The Court now turns to Plaintiff's other request for sanctions in which it seeks "a general
12 sanction that the ABBYY Defendants not be allowed to rely on any document produced on or after
13 May 25, 2012 unless Nuance first relies on the document." Dkt. No. 499 at 13. The Court finds that
14 this type of sanction — unlike an issue preclusion sanction — is more appropriate for an untimely
15 document production. *See Techsavies*, 2011 WL 723983, at *3. Here, similar to the Court's order
16 on the joint discovery dispute letter, the Court's concerns with respect to Defendants' discovery
17 abuse have been alleviated for most of the allegations in Plaintiff's motion. This is corroborated by
18 Plaintiff's reply, where Plaintiff only points out a few sets of documents for which Defendants have
19 failed to provide an adequate explanation regarding their late production. First, Plaintiff argues that
20 Defendants' excuse for the untimely production of their CEO's e-mails — that the CEO's hard drive
21 crashed in 2003 and a back-up copy of his e-mails was not discovered until recently when
22 Defendants searched a server located in Russia (Dkt. No. 516 at ¶¶ 13, 14) — does not explain why
23 there were more than 1,000 e-mails from their CEO that were dated after 2003 and not timely
24 produced. Dkt. No. 535 at 9-10; Dkt. No. 536 at ¶ 3. Second, Plaintiff points out that Defendants
25 have not explained why previously requested "transfer pricing reports" were produced so late in the
26 litigation. Dkt. No. 535 at 14-15.

27      The Court agrees with Plaintiff on these issues. Defendants' opposition does not account for
28

6

their CEO's post-2003 e-mails and why they were not produced before fact discovery closed. And, rather than explaining why the "transfer pricing reports" were not timely produced, Defendants instead argue that this made no difference since Plaintiff was able to subsequently depose their CEO about this issue. Dkt. No. 515 at 21 ("Further, with regard to the statement in the Transfer Pricing Report . . . Nuance was able to (and did) explore the meaning of this statement with the CEO and corporate representative of ABBYY USA . . . ."). Accordingly, the Court finds that an exclusionary order for late-produced documents is appropriate under these circumstances. The Court structures this sanction similar to the order issued in *Techsavies*. 2011 WL 723983, at *4.[7] Based on *Techsavies* approach, the Court orders as follows:

    1. Defendants are barred from introducing any document that was produced after June 1, 2012 that should have been produced earlier pursuant to a specific discovery request from Plaintiff.[8] Plaintiff remains free to introduce any untimely produced document from Defendants.

    2. In connection with their pretrial preparation, the parties shall meet and confer with respect to this issue. Defendants shall identify any document they wish to introduce at trial. If Plaintiff objects to any document it thinks is barred by this order, the parties shall attempt to resolve the objection by determining when the document was produced and which document request it was in response to. Defendants are permitted to rely on a document that was not timely produced if it was only recently discovered due to computer hardware problems (as outlined in Defendants' opposition to this motion).

---

[7] "WDFA is barred from introducing, either in defense of plaintiff's claims or in support of its counterclaims, any document which it should have produced in response to plaintiff's first set of document requests and which was not produced until after plaintiff filed its second set of document requests. In connection with their pretrial preparation, the parties are **ORDERED** to meet and confer about this issue. WDFA shall identify all documents it wishes to introduce. If Techsavies objects to any document it thinks is barred by this Order, the parties shall try to resolve the objection. If they cannot, they shall submit their respective positions to the Court as part of the pretrial filings and I will make final rulings at the pretrial conference." 2011 WL 723983, at *4.

[8] Plaintiff asks the Court to exclude any documents produced after May 25, 2012. This is denied since the close of discovery was June 1, 2012.

7

3. If the parties cannot resolve an objection, they shall submit their respective positions about the document at issue to the Court, in compliance with the undersigned's discovery standing order.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for sanctions is GRANTED IN PART and DENIED IN PART. Because the majority of Plaintiff's requested relief in this motion is denied, its request for attorneys' fees and costs is also DENIED.

**IT IS SO ORDERED**.

Dated: November 26, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California