FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, California 94304
Telephone:   (650) 849-6600
Facsimile:   (650) 849-6666
Erik R. Puknys (Bar No. 190926)
erik.puknys@finnegan.com
Lily Lim (Bar No. 214536)
lily.lim@finnegan.com
Hillary Cain Matheson (Bar No. 267440)
hillary.matheson@finnegan.com

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001
Telephone:   (202) 408-4000
Facsimile:   (202) 408-4400
E. Robert Yoches, *pro hac vice*
bob.yoches@finnegan.com
Zhenyu Yang (Bar No. 249112)
zhenyu.yang@finnegan.com
Douglas A. Rettew, *pro hac vice*
doug.rettew@finnegan.com
Joseph E. Palys, *pro hac vice*
joseph.palys@finnegan.com
Anna Balishina Naydonov, *pro hac vice*
anna.balishina@finnegan.com

Attorneys for Defendants
*ABBYY USA Software House, Inc., ABBYY Software, Ltd., ABBYY Production LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| NUANCE COMMUNICATIONS INC., | CASE NO. CV 08-02912-JSW (MEJ) |
| Plaintiff, | **ABBYY'S OPPOSITION TO NUANCE'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| ABBYY USA SOFTWARE HOUSE, INC., a California corporation, ABBYY SOFTWARE, LTD., a Cyprus corporation, ABBYY PRODUCTION LLC, a Russia corporation, and LEXMARK INTERNATIONAL, INC., a Delaware corporation, | Date:  May 3, 2013
Time: 9:00 a.m.
Courtroom 11, 19th Floor
Hon. Jeffrey S. White |
| Defendants. | |

3587600_7.docx

ABBYY's Opposition to Nuance's Motion
for Attorney's  Fees and Costs
Case No. CV 08-02912-JSW (MEJ)

## I. INTRODUCTION

Against the backdrop of Magistrate Judge James's finding that Nuance's prior "claim of prejudice is exaggerated" (Dkt.# 571 at 6), Nuance asserts nearly $340,000 in harm from ABBYY's production of about 1,500 documents one business day after discovery closed. This Court directed Nuance to identify the substantive harm it claims it suffered from the production, but virtually all of the fees and costs Nuance claims were avoidable or would have been spent regardless of when ABBYY completed its production. Nuance could have avoided about $110,000 in fees and costs had it agreed to additional depositions when ABBYY proposed them last June. Instead, Nuance sought to gain a tactical advantage through motions practice that achieved nothing but an Order from this Court granting the same relief ABBYY proposed six months earlier. Further, nearly $225,000 of the claimed fees and costs were for work that Nuance would have performed regardless of when ABBYY produced its documents. The remaining amounts are both insignificant and unnecessary.

Nuance also demands that the Court punish ABBYY because it "ignored Nuance's proposal . . . [that ABBYY] pay Nuance's costs associated with [the recent ABBYY] depositions in exchange for Nuance's waiving any related claim to attorneys' fees . . . ." Mot. at 1. The proposal Nuance touts, however, was merely an idea Nuance's counsel floated without client authorization, so ABBYY waited for an authorized offer, which never came. Nuance's demand for a punishment of $316,178 because its counsel believes ABBYY should have acted on his explicitly unauthorized proposal, not only defies common sense, it violates all notions of fair play and good faith.

## II. FACTS

After full discovery started in September 2011, ABBYY produced hundreds of thousands of pages of documents and millions of source code files. Dkt.# 515 at 2-8. While ABBYY was collecting and producing documents, Nuance repeatedly demanded the immediate production of large volumes of irrelevant information concerning foreign sales. *Id*. To avoid wasting judicial resources on needless discovery disputes, ABBYY agreed to Nuance's demands and produced over 76,000 pages of irrelevant documents at great burden and expense. *Id*. at 6-7. Because it had to postpone its other discovery efforts to meet Nuance's demands, ABBYY ended up producing some documents—about 1,500 documents, including about 25 Excel spreadsheets—on June 4, one

1

ABBYY's Opposition to Nuance's Motion
for Attorney's Fees and Costs
Case No. CV 08-02912-JSW (MEJ)

business day after discovery closed. Nuance counts this production as "more than 10,000 pages" (Mot. at 2), but to reach that number it counts each spreadsheet (none of which was ever used by Nuance for any purpose) as several, sometimes hundreds of, pages.  See Dkt.# 515 at 14.

Nuance wrongly states that ABBYY told the Court that all of the late-produced documents were irrelevant. Mot. at 3 & n.5. Instead, ABBYY explained that it was trying to finish production before discovery closed, but Nuance's repeated demands for irrelevant documents relating to overseas sales activity—which Nuance has never used in any deposition or cited in expert reports— interfered with that effort. Dkt.# 406 at 6; Dkt.# 449 at 6; Dkt.# 515 at 5.

Nuance also wrongly asserts that ABBYY repeatedly refused to delay or offer subsequent depositions (Mot. at 2), but the record shows that ABBYY did offer both long after discovery closed. Puknys Decl., ¶ 5. For instance, ABBYY agreed to produce witnesses in late June, more than three weeks after discovery closed and its production was complete, and it produced ABBYY USA's CEO, Mr. Tang, in mid-July. *Id.*, ¶ 6. Nothing prevented Nuance from delaying these depositions even longer if it had believed—as it asserts now—that it needed more time. Fact depositions continued through August 18, more than ten weeks after ABBYY's accused production. *Id.*

The only time ABBYY refused to delay any deposition was when Nuance demanded to reschedule the depositions of three Russian witnesses, who had rearranged their schedules to travel from Moscow to California, just before they were to take place. *Id.*, ¶ 3. Later in June, however, ABBYY reconsidered and proposed additional depositions, including for the Russian witnesses, to address any claimed prejudice from the late production, but Nuance rejected this proposal. *Id.*, ¶ 5.

## III.   ARGUMENT

Nuance grounds its motion on two fundamental errors. First, it bases its motion on Federal Rule of Civil Procedure 37(a)(5)(A) (Mot. at 1), but that Rule applies only if the Court grants a motion to compel. *See* Fed. R. Civ. P. 37(a). Nuance never even filed any such motion.

Second, Nuance states that the Court awarded preclusion sanctions under Rule 37(b) and its inherent power, even though this Court vacated Magistrate Judge James's preclusion sanction in favor of further discovery. *Compare* Mot. at 1 n.1, 2 *with* Dkt.# 582 at 1 ("This extension of time for full discovery obviates the need for preclusion sanctions. However, should the ABBYY Defendants

2

ABBYY's Opposition to Nuance's Motion
for Attorney's  Fees and Costs
Case No. CV 08-02912-JSW (MEJ)

fail to comply with requests in a timely manner,[1] the Court will revisit the issue of preclusion sanctions.").

The purpose of this motion was to show what, if any, of Nuance's costs and fees were "caused by [ABBYY's] alleged failure to produce documents on a timely basis." Jan. 11 Tr. 14:14-16, Dkt.# 602. The answer to that question is "very little, if any." Almost all of the fees and costs Nuance claims were either due to Nuance's intransigence or are expenses Nuance would have incurred regardless of the production's timing.

### A. Nuance Could Have Avoided Much of the Costs and Fees It Seeks by Acting Reasonably and Responsibly

Contrary to Nuance's assertion that ABBYY refused to postpone or offer subsequent depositions (Mot. at 1, 2, 3), ABBYY offered additional depositions and delayed others. Dkt.# 579 at 2 (citing Dkt.# 449 at 5). Nuance refused the offer, choosing instead to escalate the matter by filing three sanctions motions and related filings. The Court's decision to grant essentially the same relief ABBYY proposed in June shows that ABBYY was reasonable and Nuance was not. The Court should therefore deny Nuance's demand for the $64,470 for the sanctions motion and the $25,616 it spent on its motion for relief from Magistrate James's order.

Nuance also blames ABBYY for having to re-depose three ABBYY USA witnesses. Tyler Decl., ¶ 3. Two witnesses (Joe Budelli and Carmela Wong), however, were deposed three weeks after the June 4 production, and the third (Dean Tang) was deposed six weeks after. Puknys Decl., ¶ 6. Accordingly, Nuance had plenty of time to prepare for the depositions. Moreover, it never asked for more time even though it could have: the last fact deposition occurred on August 18. *Id.* The Court therefore has no reason to award Nuance costs for the re-depositions of Joe Budelli and Carmela Wong ($4,197.25) or Dean Tang ($2,129).

Equally baseless is Nuance's claim for $17,972 for its motion for costs and fees and its demand that ABBYY pay $316,178 as punishment for not responding to a proposal from Nuance's counsel. Mot. at 1. Nuance never officially presented this offer. Puknys Decl., ¶¶ 9-10. All Nuance's

---

[1] ABBYY fully cooperated in discovery and even helped Nuance obtain visas and provided local transportation and meals to its reporter, videographer, and interpreter. Puknys Decl., ¶_12.

3

ABBYY's Opposition to Nuance's Motion
for Attorney's Fees and Costs
Case No. CV 08-02912-JSW (MEJ)

counsel did was to make a suggestion that he admitted he had no authority to make. *Id.* Nuance's counsel later explained that even though his proposal was unauthorized (as it remains to this day), he expected ABBYY to respond. Puknys Decl., Ex. 2. Setting aside the unreasonableness of that expectation, counsel could have cleared up this misunderstanding (and avoided this motion) with a simple follow-up email. Instead, consistent with Nuance's past conduct, it filed its motion without seeking any explanation, accused ABBYY of bad faith, and demanded harsh punishment.

**B.    Virtually All Remaining Costs and Fees Nuance Seeks Were Deferred by the Late Production, Not Caused by It**

Nuance also seeks to recover costs for the first-time depositions of Konstantin Anisimovich ($1,386.50) and Sergey Andreev ($2,532.25), as well as the costs to send a court reporter ($3,317.07), videographer ($3,265.62), and interpreter ($2,734.25) to Russia, although it does not explain why it could not hire local personnel. These depositions—to the extent they were necessary—would have been taken regardless of when ABBYY produced its documents. If Nuance had the documents last March instead of June, then Nuance would have taken the depositions last April or May, instead of this February.

The same is true for the $210,120 in fees Nuance claims were necessary to prepare for the depositions. These fees for the first-time depositions were only deferred by the late production, as were the fees for the repeat depositions, since Nuance would have had to review the documents and prepare outlines based on them regardless of when they were produced.

**C.    Less than $5,000 in Costs Can Be Traced to the Production, and Even These Did Not Need to Be Incurred**

The only deposition costs that ABBYY's late production arguably caused were for Ms. Tchouzo ($1,475) and Mr. Pakhchanian ($2,367), whose initial depositions occurred during the week of June 4. Their second depositions were unnecessary, however, and covered only old ground. The Tchouzo deposition is barely mentioned in Nuance's motion and, although the Pakhchanian deposition is, Nuance badly misrepresents what he said (*see infra*, page 5).

**D.    Nuance's Discussion of the Merits Is Improper, Irrelevant, and Wrong**

Nuance ignores the Court's request to help it determine what, if any, fees and costs were caused by the late production (Jan. 11 Tr. 14:14-16, Dkt.# 602) by using almost all of its motion to

4

ABBYY's Opposition to Nuance's Motion
for Attorney's  Fees and Costs
Case No. CV 08-02912-JSW (MEJ)

attack ABBYY on the merits of the case. Mot. at 3-5. Those attacks repeat prior baseless charges, and ABBYY will not waste the Court's time by repeating why they are wrong. *See* Dkt.# 515 at 15-17, 19-20 (ABBYY's pre-filing knowledge and analysis of the patents and ABBYY USA's incorrect interrogatory response); *id.* at 17-19 (trade dress issues).

Nuance's only new argument concerns an ABBYY patent that contains several paragraphs copied from the specification of a Nuance patent. Mot. at 4. This patent is not part of the late-produced documents, so there is no legitimate reason for Nuance to discuss it.[2] Similarly irrelevant are the allegations that ABBYY was participating in "fake negotiations" with Nuance or that it intended to "offer its competing OCR products for free in the U.S. via open source if Nuance excluded it from the market based on patent rights." Mot. at 5. The emails that Nuance cites are brainstorming sessions where individual ABBYY employees (not "ABBYY" as an entity) shared ideas of how ABBYY *might* respond to threats from Nuance. Nothing in the record shows that these ideas were ever acted upon (because they never were).

Nuance also twists the recent testimony of ABBYY witnesses. For example, Nuance claims "Mr. Packhchanian (sic) conceded that ABBYY analyzed the Nuance OmniPage 11 box 'for the sake of deciding how [ABBYY designs its] own boxes,' including FineReader 6.0" (Mot. at 5), but what he actually said was that ABBYY studied the boxes of many of its "competitors, including the boxes of OmniPage. . . . *[f]or the sake of being as much different as possible . . . .*" Tyler Decl. Ex. T, Feb. 21, 2013, Pakhchanian Tr. 49:23-50:16 (emphasis added). That is, Mr. Pakhchanian testified that ABBYY tried to differentiate itself from Nuance, which is entirely consistent with his June 2012 testimony, as well as the June 2012 testimony of Carmela Wong. *See, e.g.*, Tyler Decl. Ex. S, June 4, 2012 Pakhchanian Tr. 49:20-50:17; Puknys Decl. Ex. 3, June 26, 2012 Wong Tr. 55:7-56:5.

## IV. CONCLUSION

Because ABBYY's production caused virtually none of the costs and fees Nuance claims, the Court should deny Nuance's motion.

---

[2] The patent does not describe any ABBYY product, so it is irrelevant, and ABBYY fired the person who prepared it. Tyler Decl. Ex. H, Feb. 20, 2013, Anisimovich Tr. at 48-49.

1 | Dated: March 25, 2013 | FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

By: ___/s/ Erik R. Puknys___
Erik R. Puknys
Attorneys for Defendants
*ABBYY USA Software House, Inc., ABBYY Software, Ltd., ABBYY Production LLC*

6

ABBYY's Opposition to Nuance's Motion
for Attorney's Fees and Costs
Case No. CV 08-02912-JSW (MEJ)