M. CRAIG TYLER, *Pro Hac Vice*
ctyler@wsgr.com
ABRAHAM DELAO, *Pro Hac Vice*
adelao@wsgr.com
HENRY PAN, *Pro Hac Vice*
hpan@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, Texas 78746-5546
Telephone: (512) 338-5400
Facsimile: (512) 338-5499

JAMES C. YOON, State Bar No. 177155
jyoon@wsgr.com
CHRISTOPHER P. GREWE, State Bar No. 245938
cgrewe@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Plaintiff
NUANCE COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ABBYY SOFTWARE HOUSE, *et al.*, <br><br> Defendants. | Case No.: CV-08-02912 JSW <br><br> **PLAINTIFF NUANCE COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AS PART OF DISCOVERY ABUSE SANCTIONS** |

The Court has already (1) issued evidence preclusion sanctions under Federal Rule of Civil Procedure 37(b) and its inherent power under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) and (2) reopened discovery based on ABBYY's late production. *See* Dkt Nos. 571, 582. Nuance showed in its opening brief that attorneys' fees and costs in the amount of $339,572.94 are warranted. These attorneys' fees and costs would not have occurred had ABBYY timely met its discovery obligations (as instructed by the Court) or agreed to Nuance's originally proposed schedule modifications. ABBYY should shoulder the resulting expenses.[1]

In its improperly submitted Opposition,[2] ABBYY failed to answer the Court's questions regarding whether fees and costs are warranted. Instead, ABBYY simply attempted to shift blame to Nuance, but made its "excuse" for its late production clear: ABBYY was too busy producing documents that it believed to be irrelevant to timely produce (admittedly) highly relevant documents that contradict sworn interrogatory responses until after the close of discovery. But despite the blame shifting, ABBYY cannot change the fact that ABBYY – not Nuance – was at fault here and that Nuance needlessly incurred fees and costs due to ABBYY's misconduct. At the very most, ABBYY's Opposition justifies reduction of Nuance's claim only by the amount of costs and fees associated with retaking of the ABBYY USA witnesses, leaving $240,671.51 ($106,058.00 in needless motion-related fees, $14,544.94 in costs associated with the depositions of foreign ABBYY witnesses (i.e., that ABBY refused to postpone), and $120,068.57 in fees for those depositions) as substantially justified under Rule 37.

**I.   Under the Court's Framework for This Motion, Attorneys' Fees and Costs Are Warranted.**

---

[1] Notably, Nuance did not request monetary sanctions on the basis that ABBYY refused to agree to pay the costs associated with the Court-ordered depositions; rather, monetary sanctions are warranted for ABBYY's discovery misconduct. Regardless, ABBYY mischaracterizes those discussions between the parties, as even its own submitted documents reflect. *See* Dkt No. 631 (Puknys Decl., Ex. 2 (March 15, 2013 9:41 AM Tyler email)).

[2] Nuance moves to strike ABBYY's current Opposition as untimely as the Court instructed both parties to submit briefing on attorneys' fees and costs within 10 days of the close of the additional Court-ordered discovery. Dkt No. 617 (Tyler Decl., Ex. A (CMC Transcript, 13:24-14:24). ABBYY ignored that deadline and filed this current Opposition instead.

1   As noted in Nuance's Motion (at 2:13-15), this Court's requested additional briefing
2   focused on whether monetary sanctions were justified in light of (1) the relevance of the late
3   production, (2) when the late production should have been produced, and (3) when the late
4   production was reasonably available. Dkt No. 617 (Tyler Decl., Ex. A (CMC Transcript, 13:24-
5   14:13)). Nuance addressed all three issues in its Motion. *See generally* Motion. In response,
6   ABBYY only addressed the second issue, offering no dispute that the late produced documents
7   are highly relevant and could have been produced much earlier.

8   As to the second issue, ABBYY's "excuse" for its late production is that it "had to
9   postpone its discovery efforts" to produce highly relevant documents that contradicted its
10  discovery responses and instead focus on purportedly "irrelevant documents relating to overseas
11  sales activity[3] . . . [that] interfered with that effort." Opposition, 1:20-2:8.[4] But this new excuse
12  actually underscores the harm here. If ABBYY truly was delayed in producing some of the most
13  relevant documents in the case so that it could first produce overseas sales activity, then it should
14  have *agreed to*, rather than *resisted*, Nuance's reasonable request for a discovery extension last
15  May. Indeed, ABBYY's resistance led the Court to refuse Nuance's requested extension and
16  issue an instruction to ABBYY that it produce all of the relevant documents in a timely manner
17  so that Nuance would have reasonable time to prepare for deposition. Dkt No. 410. Now, there
18  is no dispute that ABBYY failed to heed the Court's instruction, and a discovery extension was
19  ultimately necessary to alleviate the harm caused by ABBYY. The only remaining question is
20  what amount of Nuance's additional costs and fees should be paid by ABBYY.

21  **II.     Had ABBYY Followed Court Order, Attorneys' Fees and Costs With the
            Court-Ordered Discovery Could Have Been Mitigated.**
22

23  It is important here that ABBYY does not dispute the relevance of the late-produced

---

[3] ABBYY misrepresents the relevance of its overseas sales activities in this case. *See* Declaration of M. Craig Tyler concurrently filed in support of this Reply ("Tyler Reply Decl.") ¶ 3.
[4] Notably, this "excuse" fails to account for the ABBYY's shift in focus was not made until at least sixth months after ABBYY began "full discovery on the merits" on September 1, 2011. *See* Dkt No. 515 (ABBYY Opposition, 2:21-3:8, 4:22-7:13).

documents and that these documents could have been produced earlier in the case. Indeed, Nuance submitted 153 exhibits in its summary judgment oppositions. Tyler Reply Decl. ¶ 5. Of the exhibits from ABBYY's production, 75% were from ABBYY's late production, and deposition transcript excerpts from four of the of the seven ABBYY witnesses deposed pursuant to Court order (*see* Dkt No. 582 (January 2, 2013 Order)) in relation to ABBYY's late production of documents were used as exhibits. Nuance should have had this critical information long ago, and the prejudice suffered by Nuance was great.[5]

The prejudice here relates to both (1) harm caused by ABBYY for intentionally withholding critical and relevant documents until after the close of discovery, which prevented Nuance from pursuing discovery and developing its case theory related to such evidence, and (2) harm caused by ABBYY in forcing Nuance to pursue extensive motion practice and additional depositions in an attempt to minimize the first type of harm. ABBYY ignores the first type of harm entirely and focuses exclusively on the second.[6] As such, Nuance should be awarded its entire requested amount of fees and costs: $339,572.94.

Indeed, ABBYY improperly attempts to switch the blame to Nuance, suggesting that Nuance did not act "reasonably" or "responsibly." Opposition, 3:8-4:6. By doing so, ABBYY entirely ignores what prompted the original motion practice – its refusal to agree to a postponement of discovery or follow this Court's order for ABBYY to "comply with their discovery obligations with sufficient time to permit [Nuance] to prepare and complete the

---

[5] ABBYY attempts to downplay this prejudice by citing to Magistrate Judge James' finding that "Nuance's prior 'claim of prejudice is exaggerated'" (*see* Opposition, 1:2-4); however, Magistrate Judge James reached this conclusion based on Nuance's purported failure to reopen discovery. *See* Dkt No. 571, 5:12-6:10 (providing full context for statement). For the reasons noted in Nuance's Motion for Relief from that Order (granted by this Court), Nuance did seek a discovery extension and did explore ABBYY's discovery misconduct with ABBYY witnesses (and, thus, there was no exaggeration of Nuance's prejudice). *See* Dkt No. 574.

[6] Permitting such improper discovery tactics will only prompt similar litigation misconduct in the future. Defendants will have no incentive to produce harmful documents until the close of discovery; sworn interrogatory responses will become meaningless; and plaintiffs will have the onerous burden going forward to file expensive discovery motions to obtain information that is already required under the Federal Rules.

scheduled depositions." *See* Dkt No. 406 at 4-5; Dkt No. 410.  Had ABBYY done either what Nuance requested or what the Court instructed, the fees and costs that Nuance currently seeks could have been mitigated.  Again, as noted in the first paragraph of Nuance's Motion, Nuance was required to engage in substantive motion practice to obtain the same relief originally proposed by Nuance – "an 8-week extension of discovery for Nuance only to explore all issues raised in Defendants' late production." *See* Dkt No. 449 at 4.  ABBYY repeatedly refused this relief for months, then reluctantly acquiesced only when it became apparent that this Court disagreed with ABBYY's positions. *See* Motion, 1:1-9; *see also* Dkt No. 579 ("ABBYY will not object to the relief the Court suggested").  There can be no dispute that the $106,058.00 in motion-related fees incurred by Nuance could have been and should have been avoided here, and thus ABBYY should pay them all.

ABBYY's representation that the Court granted "essentially the same relief" that ABBYY proposed is inaccurate.  ABBYY admits that it refused to postpone the depositions of foreign ABBYY witnesses. *See e.g.,* Dkt No. 501, Ex. 6; *see also* Tyler Reply Decl. ¶ 6 (describing the limitations on the relief that ABBYY proposed).  These witnesses, such as Mr. Pakhchanian, were being deposed at the same time ABBYY was making its late production – *three* days after the close of discovery – and ABBYY would not delay these depositions. *Id.*  ABBYY contends that these depositions "covered only old ground." Opposition 4:19-25.  To the extent any prior deposition testimony was revisited, <u>that is precisely the reason why monetary sanctions are warranted</u>.  The "old ground" covered reveals a change in deposition testimony based on being confronted with the late-produced documents. *See e.g.*, Dkt No. 617 (Tyler Decl., Ex. S (Pakhchanian testimony denying that ABBYY changed it product packaging in relation to OmniPage 11); *cf.* Ex. T (Pakhchanian testimony admitting that it analyzed OmniPage 11 in relation to the design of its own product packaging)).[7]  Thus, Nuance is entitled to its costs

---

[7] ABBYY's contention that Nuance "twists" this testimony (*see* Opposition 5:14-22) is groundless.  As noted in Nuance's Summary Judgment Opposition, ABBYY's explanation that
(continued...)

NUANCE'S REPLY ISO MOTION FOR
DISCOVERY ABUSE SANCTIONS
CASE NO.: CV-08-02912 JSW

4

($14,544.94) associated with the depositions of foreign ABBYY witnesses that ABBYY refused to postpone, and the respective proportion of fees[8] ($120,068.57) related thereto.

Lastly, ABBYY argues that it was flexible in scheduling ABBYY USA witnesses, and it would have agreed to delay these depositions further to accommodate the time Nuance required to fully prepare. This argument ignores the fact the Nuance had to prepare for and take these depositions twice, after the close of expert discovery, and to the detriment of its case theory development with other witnesses and through other means of discovery. Thus, this portion of Nuance's requested relief ($98,901.43 in fees and costs) should still be shouldered by ABBYY. Regardless, this excuse does not alleviate ABBYY's responsibility regarding Nuance's fees and costs from the unnecessary motion practice and the Russian-based depositions, as noted above.

### III. ABBYY Never Timely Sought Review of Evidence Preclusion Sanctions.

In its Order Regarding Nuance's Motion for Discovery Abuse Sanctions (Dkt No. 517), the Court awarded evidence preclusion sanctions. Neither party timely sought review of the Court's issuances of those sanctions under Federal Rule of Civil Procedure 72. *See* FED. R. CIV. P. 72(a).[9] As a result, those sanctions should still apply, contrary to ABBYY's requests.

### IV. CONCLUSION

For the foregoing reasons, additional sanctions in the form of fees and costs in the amount of $339,572.94 are substantially justified here. At the very least, even accepting ABBYY's excuses offered in the Opposition, the amount of $240,671.51 in fees and costs – specifically $106,058.00 in needless motion-related fees, $14,544.94 in costs associated with the depositions of foreign ABBYY witnesses that ABBY refused to postpone, and $120,068.57 in fees for those depositions -- is substantially justified under Rule 37.

---

(...continued from previous page)

its analysis of Nuance's trade dress was for the sake of being different, has been refuted by ABBYY's own trade dress expert. *See* Dkt No. 625 (Nuance Opposition, 3:5-4:3).

[8] i.e., the proportion of fees with preparing for four out of the seven Court-ordered depositions.

[9] Rule 72 expressly provides that "[a] party may serve and file objections to the order within 14 days after being served with a copy" and "[a] party may not assign as error a defect in the order not timely objected to."

Dated: April 1, 2013

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ M. Craig Tyler
    M. Craig Tyler

Attorneys for Plaintiff
NUANCE COMMUNICATIONS, INC.